## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STONY BATTERY RD | : | |
| PROPERTY OWNER LLC, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-00518-JMG |
| | : | |
| QVC, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                      **October 3, 2025**

### I.   OVERVIEW

Before the Court is Defendant QVC, Inc.'s ("QVC") Motion for Discovery Sanctions against Plaintiffs Stony Battery RD Property Owner LLC and Stony Corp. Blvd. LLC ("Plaintiffs"). ECF No. 50-2. QVC's Motion arises from two depositions of Plaintiffs' principal and corporate designee, conducted pursuant to Federal Rule of Civil Procedure 30(b)(6). For the reasons set forth below, QVC's Motion is denied.

### II.   BACKGROUND

Plaintiffs initiated this lawsuit against QVC, alleging that QVC breached agreements related to the sale of real and personal property, causing damages exceeding $20 million. ECF No. 1 at 6-9; ECF No. 18 at 4. These damages allegedly include costs associated with additional staffing, replacement software and equipment, repairs, and lost profits. ECF No. 18 at 4. On August 21, 2023, QVC served Plaintiffs with notices under Rule 30(b)(6) of the Federal Rules of Civil Procedure, specifying thirty-four topics for examination. *See* ECF No. 50-5 at Ex. B; ECF No. 50-6 at Ex. C.

Plaintiffs designated Yakoub "Jack" Saadia along with Vincent Damiano as their Rule 30(b)(6) witnesses. Mr. Damiano, who serves as Vice President of IT Infrastructure and Information Security, ECF No. 18 at 2, was deposed on October 26, 2023, ECF No. 50-7 at Ex. D. During his deposition, Mr. Damiano identified the topics from the notices that he was prepared to testify about, omitting the topics related to vendor expenses and Plaintiffs' purported damages claims. *Id.* at 10-11.

### A. The Depositions of Mr. Saadia

On November 2, 2024, Mr. Saadia's first Rule 30(b)(6) deposition was conducted. *See* ECF No. 50-4 at Ex. A; ECF No. 61-2 at Ex. A. Near the start of the deposition, Mr. Saadia informed QVC's counsel that he had previously served as a Rule 30(b)(6) designee in other cases, *see* ECF No. 50-4 at 11, and stated that he was ready to testify on any of the topics noticed to the best of his ability, *see* ECF No. 61-2 at 17. However, QVC contends that Mr. Saadia was entirely unprepared to address questions regarding Plaintiffs' alleged damages and vendor expenses. ECF No. 50-2 at 7.

Throughout the deposition, QVC's counsel presented Mr. Saadia with multiple invoices, asking whether each invoice had been paid and, if so, which entity had made the payment. Mr. Saadia repeatedly responded that he could not conclusively answer either of the questions but told QVC's counsel that he would be happy to verify and provide the information later.[1] This line of questioning continued for some time, and at several points, Mr. Saadia expressed to QVC's counsel that his response would be the same for all invoices, given the large volume and the repetitive nature of the questions regarding each one.[2] After nearly six hours, Mr. Saadia had to leave to

---

[1] *See* ECF No. 50-4, Nov. Saadia Tr. at 166:16-167:12; 154:7-155:2; 170:25-171:22; 159:2; 160:23-163:3; 178:21-179:16; 157:18-158:13.

return to New York for a wedding, prompting QVC to keep the deposition open to complete the remaining hour at a later date.[3] *See* ECF No. 50-4 at 52.

Mr. Saadia's reopened deposition occurred on January 31, 2024. *See* ECF No. 50-9 at Ex. F; ECF No. 61-3 at Ex. B. The excerpts provided to the Court from this deposition indicate that QVC's counsel again asked Mr. Saadia about vendor invoice payments, and he again stated that he would need to review documents to answer many of the same questions that QVC's counsel had previously posed. *See generally* ECF No. 50-8 at Ex. E. However, Mr. Saadia also frequently referred to a damages spreadsheet that had been provided to QVC before the deposition, indicating that the answers to many of the questions could be located there. *See* ECF No. 61-3, Jan. Saadia Dep. 308:20-25; 370:20-371:3; 386:1-387:15; 388:24-389:4. Despite providing many of the same responses to QVC's questions about invoices, and despite Mr. Saadia's clarification that he could offer more definitive responses if he had the damages spreadsheet provided earlier by Plaintiffs, QVC's counsel persisted with this line of questioning.

### B. Counsels' Email Communications

On February 2, 2024, Plaintiffs' counsel emailed QVC's counsel, offering to produce Jose Cabatu, Mr. Saadia's Chief Operating Officer, *see* ECF No. 18 at 2, for a remote deposition on February 6, 2024, to testify exclusively on the topic of Plaintiffs' alleged damages, *see* ECF No.

---

[2] *See* Nov. Saadia Tr. at 156:24-157:5; 160:21-22; 168:4-10; 171:18-22; 179:7-10; 179:14-16.

[3] QVC claims that Plaintiffs "unilaterally terminated the deposition" leading QVC to expressly keep the deposition open. ECF No. 50-2 at 8. It should be noted that the deposition transcript indicates that Plaintiffs' counsel informed QVC's counsel that Mr. Saadia had a prior engagement and would need to leave at five o'clock at some point earlier in the day. *See* ECF No. 50-4 at 52. There is also some discussion between QVC's counsel and Plaintiffs' counsel regarding QVC's court reporter being ill, implying that the deposition was taken on a day or time not previously contemplated by the parties. *See id.* at 49:1-4.

50-10 at Ex. G, 2-3; ECF No. 61-7 at 5-6. QVC's counsel responded, indicating their intention to move for sanctions due to the "repeated failures to produce a remotely prepared 30(b)(6) witness" and declined the offer to depose Mr. Cabatu, citing the court-ordered discovery deadline of February 5, 2024. *See* ECF No. 50-11 at Ex. H, 2-4; ECF No. 61-7 at 2-4.

On February 5, 2024, Plaintiffs' counsel notified QVC's counsel via email that Plaintiffs had supplemented their document production. *See* ECF No. 50-12 at Ex. I, 2. The email included an attachment of an Excel document which was to be the supplement (the "Excel File"). *See* ECF No. 61-9. Upon analysis, QVC's counsel discovered that the Excel File had been created on the same day and was last modified by Mr. Cabatu. *See* ECF No. 50-13 at Ex. J, 2-3.

### C. Motion for Sanctions

QVC filed this Motion for Sanctions on February 9, 2024. In its Motion, QVC first requests that the Court preclude Plaintiffs from introducing any documents or testimony in dispositive motions or at trial that were not produced in discovery prior to February 4, 2024, the day before the court-ordered discovery deadline. ECF No. 50-2 at 15. Second, QVC seeks monetary sanctions against Plaintiffs and their counsel, including the costs and legal fees incurred in taking the reopened deposition of Mr. Saadia, and in filing the Motion for Sanctions. *Id.* at 17-18.

Plaintiffs filed their opposition to the Motion on March 1, 2024, requesting that the Court deny QVC's Motion in its entirety and, instead, order a new deposition under Rule 30(b)(6). *See* ECF No. 61. QVC responded to Plaintiffs' opposition brief on March 20, 2024. *See* ECF No. 69.

As a preliminary matter, QVC's request for preclusive sanctions and Plaintiffs' counterproposal for a new court-ordered deposition are now moot since the Court has already ruled on the parties' summary judgment motions and dismissed the case. *See* ECF No. 79. Therefore, the sole remaining issue is whether the Court should grant QVC's request for Plaintiffs and their

counsel to pay QVC's costs and legal fees associated with the reopened deposition of Mr. Saadia on January 31, 2024, and with filing the Motion for Sanctions.

## III.    LEGAL STANDARD

Rule 30(b)(6) permits a party to depose a corporation through a designated witness after serving them with a notice describing the matters for examination "with reasonable particularity." Fed. R. Civ. P. 30(b)(6). Once the corporation receives the notice, it must prepare its designee(s) to provide "binding answers on its behalf" and to "conduct a reasonable inquiry" to locate the requested information. *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, F.R.D. 203, 216 (E.D. Pa. 2008) (citations omitted). Failure to adequately prepare may be sanctioned as a failure to appear under Rule 37 when the witness is unable to provide information about the noticed topics. *See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) ("In reality, if a Rule 30(b)(6) witness is unable to give useful information, he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it."). The deponent's "lack of personal knowledge is irrelevant: the organization must provide a witness to "testify as to matters known or reasonably available to the organization." *Russo v. Aerojet Rocketdyne, Inc.*, 2020 WL 4530703, at *6 (E.D. Pa. Aug. 6, 2020) (internal quotation marks and citation omitted). The adequacy of a designee's preparation is determined on a "fact-specific" basis. *See id.* at *6 (citations omitted).

District courts possess broad discretion to impose sanctions for discovery violations, *Barbee v. SEPTA*, 323 Fed. App'x 159, 162 (3d Cir. 2009), but should exercise the authority "only when absolutely necessary." *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 109 (3d Cir. 1999); *see also Bistrian v. Lebi*, 448 F. Supp. 3d 454, 496 (E.D. Pa. 2020) (emphasizing the Third Circuit's preference for sanctions that are no more severe than necessary to remedy any prejudice). When sanctions are appropriate, Rule 37(d)(3) requires the court "order the disobedient party, the

attorney advising that party, or both to pay the reasonable expenses, including attorney's fees," unless doing so would be unjust. Fed. R. Civ. P. 37(d)(3).

Still, courts in this circuit generally avoid imposing sanctions related to Rule 30(b)(6) depositions unless there is clear evidence of bad faith or a willful obstruction of discovery. *See generally Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 208 (D.N.J. 2023) (noting that "[t]o warrant sanctions under . . . Rule 37(d), the deponent must be so uncooperative that the deponent effectively fails to appear for the deposition") (alterations in original) (internal quotation marks and citations omitted); *Airgas-E. Inc. v. GT & S, Inc.*, 2010 WL 11561103, at *3 (E.D. Pa. Jan. 22, 2010) (noting that "sanctions pursuant to Rule 37(d) are only appropriate where the Rule 30(b)(6) deponent is unprepared, and the facts of cases where such sanctions have been rewarded show vexatious behavior").

## IV.    DISCUSSION

QVC asserts that Plaintiffs' failure to produce a witness adequately prepared to testify about Plaintiffs' purported damages constitutes a violation of Rule 37(d). *See* ECF No. 50-2 at 15. QVC argues that despite having two opportunities to prepare and assuring QVC's counsel that he would review the necessary documentation, Mr. Saadia failed to provide sufficient regarding Plaintiffs' damages claims. *Id.* at 15. Specifically, QVC claims that Mr. Saadia was unable to confirm whether certain vendor invoices included in Plaintiffs' damages claims were paid, and if so, which entity made the payments. *Id.* at 7-8. Additionally, QVC contends that Mr. Saadia could not provide a basis for Plaintiffs' alleged lost profits. *Id.* at 8. QVC also highlights that Mr. Saadia admitted to only consulting with his attorney in preparation for his reopened deposition and did not meaningfully review any of the records he had previously indicated he would check after his first deposition. *Id.*

In addition, QVC says that Mr. Saadia's lack of preparation is "particularly egregious" given his prior experience as a Rule 30(b)(6) designee in previous litigation. *Id.* To support its request for sanctions, QVC cites a case where Mr. Saadia also served as a Rule 30(b)(6) deponent and the court ultimately ordered a new witness and imposed sanctions. *See id.* (citing *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 304 (S.D.N.Y. 2019)).

Further, QVC argues that the Excel File was only provided by Plaintiffs after QVC declined their offer to depose Mr. Cabatu the day after the discovery deadline, suggesting that Plaintiffs attempted to "manufacture" a substitute for the testimony he would have provided. *See id.* at 16-17. QVC points out that the Excel File was created on the same day it was sent to QVC by Mr. Cabatu, characterizing the document as "dubious and contrived evidence." *Id.* at 17.

Plaintiffs counter that QVC selectively omits portions of the depositions to "poison the Court" and cast Mr. Saadia in a negative light. *See* ECF No. 61 at 3.  First, Plaintiffs contend that QVC's claim that Mr. Saadia was unable to provide testimony about their lost profits is inaccurate, as he explained to them how the $10 million amount was calculated.[4] *Id.* at 5. Plaintiffs also assert that QVC "conveniently omits" portions of Mr. Saadia's reopened deposition testimony where he detailed his preparation, and that fails to mention that Mr. Saadia repeatedly referred to the damages spreadsheet containing a breakdown of Plaintiffs' asserted damages. *Id.* Plaintiffs clarify that although Mr. Saadia acknowledged the spreadsheet contained the answers QVC sought, they did not allow him to review it during the deposition. *Id.* at 5-6. Finally, Plaintiffs argue that during both depositions, Mr. Saadia answered QVC's counsel's questions in good faith, and to the best

---

[4] Plaintiffs' counterargument is in reference to Mr. Saadia's response when asked how Plaintiffs arrived at $10 million for their lost profits. Mr. Saadia replied: "At that time I knew high level of the amount of order that has not been shipped out due to not having enough equipment to handle the warehouse. That was in millions. So that's how we came up with the number. It might be more than $10 million, in fact." *See* ECF No. 61-2 at Ex. A, 192:3-14.

of his ability, given the complexity and volume of the information involved. *Id.* at 4, 9. They say that Rule 30(b)(6) "does not require perfection," claiming that expecting Mr. Saadia to confidently answer questions about specific invoices extracted from "tens of thousands of documents" exchanged during discovery is unreasonable. *Id.* at 2.

Moreover, Plaintiffs argue that their inability to produce Mr. Cabatu before the close of discovery was a consequence of QVC's own actions. *Id.* at 6. They allege that "QVC unilaterally scheduled depositions of countless third parties, regardless of necessity, in an apparent effort to drive up Plaintiffs' costs or otherwise embarrass Plaintiffs." *Id.* To support this claim, Plaintiffs note that QVC informed them of a deposition with a third-party vendor scheduled for February 2, 2024, with the possibility of reopening it on February 5, 2024, making February 6, 2024, the earliest available date for Mr. Cabatu to testify. *Id.* Plaintiffs also state that their counsel contacted QVC's counsel to confirm whether the reopened deposition was indeed scheduled for February 5, but QVC refused to provide an answer. *Id.* Regarding the Excel file, Plaintiffs maintain that it is simply a condensed summary of the documents supporting their damages claims and that it was appropriately provided before the court-ordered discovery deadline. *Id.* at 7. They contrast this with QVC's own supplemental discovery, which they did not produce until eleven days after the deadline. *Id.*

In its response, QVC contends that Plaintiffs falsely claimed Mr. Saadia acted in good faith during his depositions. *See* ECF No. 67-1 at 9. QVC argues that not only did Mr. Saadia admit to being unprepared, but was uncooperative, and even refused to answer certain questioned posed by QVC's counsel. *Id.* at 8. In support pf these claims, QVC references portions of the deposition where Mr. Saadia was questioned about his criminal history, arguing that his answers demonstrate a lack of cooperation and honestly. *Id.* at 8-9.

The Court agrees with QVC that Mr. Saadia's preparation for his depositions was inadequate. While Plaintiffs emphasize the large volume of documents produced during discovery, Mr. Saadia was nonetheless obligated to review those documents relevant to the topics for which Plaintiffs received notice. *See Russo*, 2020 WL 450703, at *6 (holding that "if documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed"). This responsibility was particularly critical for Mr. Saadia regarding Plaintiffs' vendor expenses and purported damages, especially after his first deposition, when he was aware of the specific topics that would be addressed in the reopened session.

But, even though Mr. Saadia's preparation may have been incomplete, the Court does not find that his testimony amounted to a failure to appear. He did respond to many of QVC's counsel's questions regarding Plaintiffs' damages claims, including whether certain records were included in those claims. *See* ECF No. 50-4 at 179:5-180:15. He also provided a general explanation of how Plaintiffs calculated their $10 million lost profits claim, *see id.* at 191:10-193:21, and described how expenses were cataloged among various entities, including those related to the QVC building, *see* ECF No. 61-3 at 287:6-288:23. Additionally, when asked about the payment of vendor invoices, Mr. Saadia frequently referred to a spreadsheet previously provided to QVC, noting that it contained the answers to many of QVC's specific questions. *See* ECF No. 50-9 at 308:20-25; 370:20-371:3; 386:1-387:15.[5]

---

[5]    It is also worth noting that QVC might have benefited from serving Plaintiffs with interrogatories or using a similar discovery tool to obtain information regarding whether the vendor invoices were paid, and which entity made the payments. *See e.g., Henrik Klinge Retained Tr. v. Triumph Apparel Corp.*, 2012 WL 259989, at *9 (M.D. Pa. Jan. 27, 2012) (denying motion for sanctions for Rule 30(b)(6) designee's purported lack of preparation, and noting that if the moving party wanted to "obtain[] information about whether the company ha[d] any assets or bank

Although the deposition notices covered thirty-four topics, QVC identified only two areas where Mr. Saadia was allegedly unprepared to testify. *See Belmont Holdings Corp. v. Unicare Life & Health Ins. Co.*, 2000 WL 1920039, at *3 (E.D. Pa. Dec. 1, 2000) (noting that "a witness's failure to testify fully on all the topics set forth in a Rule 30(b)(6) notice is not tantamount to a complete failure to appear justifying sanctions") (citations omitted); *Toll Bros. Inc. v. Century Sur. Co.*, 2011 WL 1343167, at *3 (E.D. Pa. Apr. 7, 2011) (finding that the deponents' "inability to testify on all the issues delineated in the notices of examination" was not "tantamount to non compliance"). The Court is not persuaded that these depositions, which resulted in transcripts exceeding two hundred pages for the first session and over four hundred pages for the second, constitute a failure to appear, particularly given that the reopened deposition was intended as a continuation of the first. *See Fashion Exch. LLC*, 333 F.R.D. at 308 ("A six-hour long deposition, producing a transcript over 200 pages, does not rise to the level of a failure to appear.") (footnote omitted) (citations omitted).

Furthermore, QVC has not convincingly demonstrated that Mr. Saadia acted in bad faith or intentionally obstructed discovery. The deposition excerpts submitted to the Court do not reveal any deliberate evasion, combativeness, or intent to withhold relevant information. QVC's assertion that Mr. Saadia's conduct during his depositions, along with Plaintiffs' overall discovery practices, indicates bad faith is unpersuasive. See ECF No. 67-1 at 9-10. The examples QVC cites—such as Mr. Saadia's responses regarding his criminal history or opinions on employee evaluations—were not topics included in the deposition notices, and he was therefore not obligated to provide binding answers on those subjects. See *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, 250 F.R.D.

---

accounts at the current time and, if so, the value of such assets, and the location and holdings," interrogatories or similar discovery methods "may have been an efficient and useful means" instead).

203, 216 (E.D. Pa. 2008) ("[I]f a Rule 30(b)(6) witness is asked a question concerning a subject that was not noticed for deposition . . . the witness need not answer the question.").

QVC also repeatedly cites a case where Mr. Saadia served as a Rule 30(b)(6) witness, arguing that the court's decision to order a new witness and impose sanctions in that instance supports their claim of a pattern of bad faith in his deposition preparation. See ECF No. 50-2 at 3-4, 12, 15 (citing *Fashion Exch. LLC*, 333 F.R.D. at 304). However, this argument is unconvincing, as the *Fashion Exchange* court specifically granted sanctions based on the conduct of the plaintiff's counsel during Mr. Saadia's deposition, not under Rule 37(d). In fact, the court explicitly denied the motion for sanctions under Rule 37(d). *See Fashion Exch. LLC*, 333 F.R.D. at 308-09 ("Because the Court finds that sanctions are appropriate under Rule 30 already and that Mr. Saadia was prepared to answer, and indeed did answer, many of the questions, sanctions under Rule 37(d) are not warranted here.").

In sum, a review of the deposition transcript excerpts provided to the Court does not reveal the kind of willful non-compliance or bad faith that typically justifies the imposition of sanctions under Rule 37(d).[6]

---

[6] *See*, e.g., *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 266 (E.D. Pa. 2015) (granting exclusionary and monetary sanctions against a party whose co-owner and corporate designee "never took his discovery obligations seriously," said that "others in the company were more knowledgeable" about several noticed topics during his Rule 30(b)(6) deposition, blatantly disregarded court orders following four separate motions to compel, and whose behavior during discovery was "deceptive and darkly laughable"); *Black Horse Lane, Assoc., L.P.*, 228 F.3d at 304-05 (affirming the district court's imposition of exclusionary and monetary sanctions concluding that the Rule 30(b)(6) deponent exhibited an "uncooperative attitude" and "flagrant disregard for his obligations," where he "failed to offer meaningful testimony about most, if not all, of the items specified in the notice of deposition," admitted that he had not read the notice at all, claimed ignorance as to his status as the Rule 30(b)(6) designee or what a Rule 30(b)(6) designee meant, despite having a license to practice law, and law degrees "from prestigious universities," and declined to have any knowledge about agreements he negotiated and signed).

## V.    CONCLUSION

While Mr. Saadia's testimony may be imperfect, it does not warrant an imposition of monetary sanctions under Rule 37(d). So the Court denies QVC's Motion for Sanctions. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

12